UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

PATRICK LYNN RUSSELL                CIVIL ACTION NO. 13-cv-3268

VERSUS                              JUDGE HICKS

DEPUTY SLAY, ET AL                  MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

Patrick Lynn Russell ("Plaintiff") is a self-represented inmate who was formerly housed at the Caddo Correctional Center. (He is now in the Dallas County Jail.) He alleges that Caddo Deputy Alvin Slay slammed closed the tray hatch door on Plaintiff's cell, which smashed Plaintiff's finger. The injury allegedly required stitches and caused Plaintiff to lose his fingernail. Plaintiff complains that Slay subjected him to excessive force and denied him medical care.

Deputy Slay and Sheriff Steve Prator, who was also named as a defendant, filed a Motion for Summary Judgment (Doc. 43). Plaintiff responded by filing his own Motion for Summary Judgment (Doc. 49). Both motions are supported by competing evidence. For the reasons that follow, it is recommended that Plaintiff's motion be denied and Defendants' motion be granted.

**Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A fact is "material" if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Anderson, supra; Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). If the moving party carries his initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine dispute of a material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986).

**Constitutional Claims**

    **A. Excessive Force**

Plaintiff's principal claim is that Deputy Slay subjected him to excessive force by slamming his finger in the tray hatch. It is not clear from the record whether Plaintiff was a pretrial detainee or a convicted inmate at the time of the incident, so the court will treat his claims under the standard for pretrial detainees until evidence to the contrary is presented. The claims of a pretrial detainee are governed by the Due Process Clause, rather than the Eighth Amendment that applies to claims by convicted prisoners.

"[A] pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." Kingsley v. Hendrickson, 135 S.Ct. 2466, 2473 (2015). Objective reasonableness turns on the facts and circumstances of each particular case, and a court must make the determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight. Id. A non-exclusive list of factors that may bear on the reasonableness or unreasonableness of the force used include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." Id.

Mere negligence by the officer will not make out a claim. Kingsley, 135 S.Ct. at 2472, citing Daniels v. Williams, 106 S.Ct. 662 (1986) (affirming dismissal of inmate's claim that he slipped on a pillow negligently left on the stairs by a deputy). But the detainee need not prove intent to punish to prevail on a claim that his due process rights were violated. He "can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." Kingsley, 135 S.Ct. at 2473-74.[1]

---

[1] The Fifth Circuit has not yet addressed the impact of Kinglsey on its prior decisions regarding pretrial detainees, but it appears Kingsley overruled cases such as Valencia v. Wiggins, 981 F.2d 1440, 1446 (5th Cir. 1999) that applied the Eighth Amendment standards to pretrial detainees and required proof of malicious or sadistic

### B. Medical Care

Plaintiff also complains that Deputy Slay did not seek medical treatment for Plaintiff's injury. For a convicted prisoner or pretrial detainee to prevail on a claim that his medical care (or lack of care) violated the Constitution, he must prove that prison or jail officials were "deliberately indifferent" to his "serious medical needs." Estelle v. Gamble, 97 S.Ct. 285, 291 (1976); Hare v. City of Corinth, 74 F.3d 633, 643 (5th Cir. 1996) (en banc). Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. Estelle, 97 S.Ct. at 291-92.

### C. Qualified Immunity

Defendants challenge the veracity of Plaintiff's claims and assert the defense of qualified immunity. The court determines whether an official is entitled to qualified immunity by asking (1) whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right, and (2) if the allegations could make out a constitutional violation, whether the right violated was clearly established at the time. Mace v. City of Palestine, 333 F.3d 621, 623–24 (5th Cir. 2003).

---

intent to cause harm. Andrew v. St Tammany Parish Prison, 2016 WL 447680, *8 (E.D. La. 2016).

**Summary Judgment Record**

    **A. Slay's Evidence**

Deputy Slay offers an affidavit in support of his motion. He testifies that he has worked as a Caddo sheriff's deputy since 2011. He states that on November 26, 2013, he helped deliver "commissary" to Plaintiff's housing unit. Before making the delivery, the deputy must verify the identity of the inmate by checking the inmate's wristband. Slay states that Plaintiff "initially put his arm out the wrong way, and his information could not properly be verified." Slay says that he "then walked over to his cell to get the information." He continues:

> When I approached the door to his cell, [Plaintiff] stuck his arm out through his tray hatch and grabbed my right hand. He then suddenly withdrew his arm, and I quickly reacted and closed the tray hatch to prevent another incident. When I acted to close the hatch, I did not realize that one of [Plaintiff's] fingers was still in the way of the hatch door. I then re-opened the hatch door to allow [Plaintiff] to pull his hand back fully within his cell.

Slay testifies that he had no run-ins with Plaintiff before that day and did not have any incidents with him afterward. Slay adds:

> I did not intentionally close the latch on [Plaintiff's] finger. I simply reacted quickly to prevent him from trying to grab at me again. I received training on ways to minimize the safety risks posed by an inmate trying to grab an officer, and I acted in accordance with that training.

Slay attaches to his affidavit a copy of video surveillance of the incident. The surveillance system does not record audio. The court has watched the video a number of times on different viewing devices. It shows a deputy (presumably Slay) approach a cell, and he is accompanied by an inmate and a second person dressed in civilian clothes. The other

person is presumably the commissary employee (Ms. Mindy) who Plaintiff mentions in his complaint. The recording is a time-lapse type, so it is not a completely smooth recording. It shows the deputy approach the door and, after some indiscernible activity, suddenly lean into the door in a manner that is consistent with trying to force a hatch door closed. Slay and Plaintiff both argue that the video will substantiate their version of the facts, but the recording simply does not provide the degree of detail that would allow simple resolution of this dispute. Given its lack of clarity, it does nothing to support or undermine either version of the events.

Slay's affidavit does not speak directly to the allegation that Slay did not seek medical assistance for Plaintiff. His only mention of that issue is his testimony that: "It is further not the policy of the Sheriff's Office to deny medical treatment to those in need of care." Nurse Sheila Wright offers an affidavit and testifies that Plaintiff "received medical attention for his finger injury on November 26, 2013, at 4:00 p.m." She adds that Plaintiff "was then transferred to an emergency room for further treatment." Slay does not testify that he made the request that Plaintiff receive treatment, and neither Slay nor Wright provide any details about who did make the request.

### B. Plaintiff's Evidence

Although not competent summary judgment evidence, Plaintiff's prior description of the event lends some context for his sworn statements. Plaintiff alleged in his grievance filed at the jail that Slay opened the tray hatch and asked Plaintiff to show his arm band. Plaintiff alleged that he extended his arm and "that's when Deputy Slay pull my wrist and held it tight

which cause me to try to pull my arm back in the tray hatch that's when Deputy Slay slam the tray hatch on my arm." Plaintiff said he tried to pull his arm all the way back, but his finger "ending up getting caught in the door."

Plaintiff's motion is supported by his declaration made under penalty of perjury in compliance with 28 U.S.C. § 1746, which makes it competent summary judgment evidence. Hart v. Hairston, 343 F.3d 762 n. 1 (5th Cir. 2003). Plaintiff declares that Slay "slam my hand in a tray hatch while I was being deliver commissary for no reason." He adds that "Slay did not help I the plaintiff seek any medical attention for my injury which he was aware he cause." Plaintiff does admit that he "did receive medical attention for my finger on 11-26-13 I was then transferred to LSU emergency room to have my finger stitch up." Plaintiff states that he also had his arm and finger x-rayed at the hospital. He alleges in his complaint that he lost a fingernail due to the incident, and Slay has not offered evidence to the contrary.

Plaintiff's memorandum (Doc. 49) contains similar assertions that Deputy Slay slammed Plaintiff's finger in the hatch "for no reason." Plaintiff also says in the memorandum that Slay grabbed his wrist forcefully, causing Plaintiff to pull his arm back in the cell, after which Slay "slam the tray hatch on my arm." Plaintiff states that he was screaming to let Slay know his finger was in the door, but Slay didn't listen and "just kept on pushing the tray hatch further" until he could lock the hatch with Plaintiff's finger caught in it.

Plaintiff concludes his memorandum with a statement that it is sworn to under penalty of perjury, but Plaintiff did not sign the memorandum to make that declaration effective

under Section 1746, which requires the declaration be "subscribed by" the declarant. Subscribed, in that context, is ordinarily defined as to sign one's name to a document. An unsigned declaration is not valid. White v. Allstate Ins. Co., 513 F.Supp. 2d 674, 680 n. 5 (E.D. La. 2007); Davis v. Solid Waste Services, Inc., 20 F.Supp. 3rd 519, 530 (E.D. Pa. 2014). Accordingly, only the statements in Plaintiff's declaration are properly considered in this summary judgment contest. Mere statements in an unsworn memorandum are not competent summary judgment evidence. Larry v. White, 929 F.2d 206, 211 n. 12 (5th Cir. 1991).

**Analysis**

    **A. Claims Against Deputy Slay**

        **1. Excessive Force**

Deputy Slay testifies that Plaintiff grabbed Slay's right hand, Plaintiff suddenly withdrew his arm, and Slay reacted by quickly closing the tray hatch without realizing that one of Plaintiff's fingers was still in the way of the door. Plaintiff, in contrast, alleges that it was Slay who pulled Plaintiff's wrist, which caused Plaintiff to try to pull his arm back, which was followed by the slam of the door. But, as noted, Plaintiff's mere unsworn allegations are not competent summary judgment evidence. Plaintiff's only competent evidence on this claim is his statement under penalty of perjury that Slay "slam my hand in a tray hatch ... for no reason." The video evidence does not support or undermine either party.

Plaintiff has offered nothing but a conclusory statement that the slamming was "for no reason" and has not pointed to any evidence that would indicate the incident was anything other than an accident. Affidavits that merely set forth ultimate or conclusory facts are insufficient to support or defeat a motion for summary judgment. Galindo v. Precision American Corp., 754 F.2d 1212, 1216 (5th Cir. 1985); Martin v. Fort Wayne Police Dep't, 2014 WL 1319337, *7 (N.D. Ind. 2014) (affidavit testimony that plaintiff was "stopped and harassed for no reason" was vague legal conclusion that did not defeat summary judgment for police officers).

There is no evidence of any disagreement between Slay and Plaintiff, nor are there other facts that would allow a reasonable inference that Slay acted intentionally. The bare assertion that the slamming of the hatch was for no reason is not sufficient to warrant a trial on this claim. Slay's motion should be granted, and Plaintiff's motion should be denied, with respect to the excessive force claim.

### 2. Medical Care

Plaintiff states under penalty of perjury that Slay did not help him seek medical attention for the injury to his finger. Plaintiff alleges that he and other prisoners caused a disturbance by yelling, which may have attracted the attention of other officers, which led to the rendering of medical care. The summary judgment record is not clear on how or why Plaintiff received care, but it does show that Plaintiff was treated at the jail within about 20 minutes of the incident, and he was then taken to an emergency room where he was x-rayed and received stitches in his finger. There is no evidence the finger was broken or

permanently harmed in any way; the evidence shows only that it was cut enough to warrant an unknown number of stitches. Plaintiff alleges in his complaint that he also lost a fingernail.

To prevail on a claim that denial of medical care violated the constitution, Plaintiff must prove that Deputy Slay was deliberately indifferent to his "serious medical needs." The Fifth Circuit has said that a serious medical need is "one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n. 12 (5th Cir. 2006). In applying these standards, it must be remembered that the Fourteenth Amendment is not "a font of tort law" on top of the systems under state law. Paul v. Davis, 96 S.Ct. 1155, 1160 (1976).

Plaintiff's finger was cut, but courts have held that even a broken finger does not rise to the level of a serious medical need which triggers constitutional protection. In Green v. Corr. Corp. of Am., 2013 WL 1567465, *2 (W.D. La. 2013) (Kirk, M.J.), the prisoner alleged that his finger was cut in a printing press and, though the finger was sutured, officials delayed getting an x-ray for several days. The x-ray revealed a fracture, which required a splint and occupational therapy. The court dismissed the complaint as frivolous, noting that "[n]umerous cases have found that a broken finger does not rise to the level of a serious medical need for purposes of a constitutional analysis."[2]

---

[2] Magistrate Judge Kirk's report and recommendation was adopted by Judge Trimble, 2013 WL 1567445 (W.D. La. 2013), and affirmed on appeal, 543 Fed. Appx. 376 (5th Cir. 2013).

The cases cited by Green include Duncan v. Owens, 2006 WL 1999166 (W.D. Ark. 2006) ("A broken finger is not an objectively serious medical need."); Rivera v. Johnson, 1996 WL 549336 (W.D. N.Y. 1996) ("Prison inmates suffering from ailments such as ... a broken finger have all been held to fail to satisfy the constitutional serious-medical-need standard.... A broken finger, without more, simply does not present a condition of urgency ... which correspondingly merits constitutional protection."); Mitchell v. Maynard, 80 F.3d 1433, 1444 (10th Cir.1996) (no deliberate indifference when prisoner not treated for broken fingers that he did not complain of for two days); and Brown v. Mcgregor, 2006 WL 2167157,*6 (N .D. Ga. 2006) (swollen finger, which turned out to be slight fracture of fourth distal metacarpal, was not a serious medical need when plaintiff failed to seek pain medication or further medical attention after initial examination). See also Clemons v. King, 398 Fed. Appx. 41 (5th Cir. 2010) (prison medical staff treated fractured finger but did not refer prisoner to an outside orthopedic specialist; summary judgment for defendants affirmed).

The record indicates that Plaintiff suffered a cut to a finger that was enough to warrant an unknown number of sutures. Plaintiff alleges that he also lost a fingernail, but there is not even an allegation that he suffered a broken bone, lasting damage, or pain beyond what one would expect from getting a hand caught in a door. Such an experience is unpleasant, but the pain is of a temporary nature, and there are no permanent effects or complications if treatment is slightly delayed, such as by the 20 minutes in this case. Plaintiff's injury was almost certainly painful, but a prisoner's cut finger simply does not rise to the level of

triggering the United States Constitution's Due Process Clause and requiring a federal trial if a deputy aware of the injury does not immediately seek medical treatment for the prisoner. With respect to the medical care claim, Plaintiff's motion should be denied, and Slay's motion should be granted. All claims that Slay violated the constitution in connection with Plaintiff's medical care should be dismissed.

### B. Claim Against Sheriff Prator

#### 1. Sheriff's Office

Plaintiff's complaint named as a defendant the Caddo Parish Sheriff's Office, but a sheriff's office or sheriff's department is not a legal entity capable of being sued. Cozzo v. Tangipahoa Parish Council- President Government, 279 F.3d 273, 283 (5th Cir. 2002). The sheriff is a proper defendant, and Sheriff Steve Prator appeared in this case and joined the motion for summary judgment. He argues that there is no basis to hold him liable under 42 U.S.C. § 1983 even if Slay is liable.

#### 2. No Underlying Claim

Supervisor liability may attach under Section 1983 in limited circumstances, but only after an underlying constitutional violation by a deputy has been demonstrated. City of Los Angeles v. Heller, 106 S.Ct. 1571 (1986); Smith v. Walden, 2000 WL 1056091 (5th Cir. 2000). It was recommended above that summary judgment be granted on the underlying claims, so any supervisor liability claim against Prator should also be dismissed without the need for further analysis. In the alternative, the merits of a supervisory liability claim against Prator will be discussed below.

### 3. Alternative Merits Analysis

Supervisors such as a sheriff may not be held liable under Section 1983 based on any theory of vicarious liability for the actions of subordinates. Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001). The plaintiff must show independent liability of the supervisor. One way he may establish such liability is to demonstrate an official policy or custom of the sheriff was a moving force behind the violation of constitutional rights. Id.; Hines v. Henson, 293 Fed. Appx. 261 (5th Cir. 2008). Another way is to demonstrate that the supervisor failed to supervise or train the officer who committed the underlying constitutional violation, there is a causal connection between the failure and the violation, and the failure amounted to deliberate indifference to the plaintiff's constitutional rights. City of Canton v. Harris, 109 S.Ct. 1197 (1989); Estate of Davis v. City of North Richland Hills, 406 F.3d 375, 381 (5th Cir. 2005).

Sheriff Prator challenges Plaintiff's ability to establish liability under such a theory. He also points to the testimony of Deputy Slay that Slay received training on ways to minimize the safety risks posed by an inmate trying to grab an officer, and he acted in accordance with his training. Slay and Nurse Wright testify that it is not the policy of the sheriff to deny medical treatment to inmates in need of care.

Plaintiff offers no competent evidence of a policy or custom of the sheriff that is behind the incident at issue, nor does he present evidence that any failure to adequately train or supervise caused his alleged harm. He does not speak to the sheriff's liability in any significant way in his motion, and it is not clear that he really even seeks to assert a claim

against the sheriff. Sheriff Prator has shouldered his summary judgment burden, and Plaintiff has not met his, so Prator is entitled to summary judgment dismissing the claims against him.

**Conclusion**

Plaintiff has not met the heavy burden that faces a plaintiff who moves for summary judgment. Defendants, on the other hand, have demonstrated that there is no genuine dispute of material fact that, under applicable law, would warrant a trial on any of Plaintiff's claims. Defendants are entitled to entry of summary judgment in their favor.

Accordingly,

IT IS RECOMMENDED that Plaintiff's Motion for Summary Judgment (Doc. 49) be denied, and Defendants' Motion for Summary Judgment (Doc. 43) be granted by dismissing with prejudice all of Plaintiff's claims against all defendants.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that

party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See <u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 19th day of May, 2016.

Mark L. Hornsby
U.S. Magistrate Judge